# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

DANA C. ROGERS,
       Appellant,

      v.

DEPARTMENT OF VETERANS
  AFFAIRS,
       Agency.

DOCKET NUMBER
CB-7121-18-0006-V-1

DATE: January 30, 2023

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

<u>Calanit Kedem</u>, Esquire, Washington, D.C., for the appellant.

<u>Robert Vega</u>, Esquire, Hines, Illinois, for the agency.

### BEFORE

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member
Tristan L. Leavitt, Member

### FINAL ORDER

¶1      The appellant has filed a request for review under 5 U.S.C. § 7121(d) of an arbitrator's decision that sustained her removal for unacceptable performance. For the reasons discussed below, we GRANT the request and REVERSE the arbitrator's decision.

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

## BACKGROUND

¶2        The appellant was a GS-14 Attorney-Advisor (Veterans) with the Board of Veterans' Appeals.  Request for Review (RFR) File, Tab 1 at 4.  The appellant's performances standards for the 2014-2015 fiscal year (FY15), stated that, to perform at the fully successful level in the productivity critical element of her performance standards, she was required to produce "a sufficient share of [the agency's] decisions and other work products, unless good cause is shown.  A sufficient share is defined as 156 or more credits for the performance year."  *Id*. at 778, 781.  Generally, the sufficient share required to meet the standard was referred to as the fair share.  *Id*. at 928.

¶3        On September 11, 2015, the agency notified the appellant that her performance of the duties of her position in the critical element of productivity was unacceptable and that she was being placed on a performance improvement plan (PIP).  *Id*. at 923-27.  The PIP provided that the appellant's current performance year, which would normally end effective September 30, 2015, would be extended through Monday, December 28, 2015, to afford her a reasonable opportunity to improve.  *Id*. at 923.  The PIP further provided that, to successfully complete the PIP, the appellant had to meet the cumulative productivity requirement for her extended performance year of 192 credits by Monday, December 28, 2015.  *Id*. at 925.  The 192 credits represented the FY15 requirement of 156 credits plus 36 credits.

¶4        On January 14, 2016, the agency proposed to remove the appellant for unsuccessful performance in the critical element of productivity.  *Id*. at 1019-22.  The notice of proposed removal provided that, after receiving opportunities for assistance during the PIP, the appellant failed to meet her quarterly and year-end objectives, as follows:  (1) as of September 30, 2015, she had only produced 124.5 credits, which is 31.5 credits short of the 156 credits required, and (2) as of December 28, 2015, she had only produced 145.5 credits, which is 37.5 credits

short of the 183 credits required.[2] *Id*. On March 24, 2016, the agency issued a decision sustaining the proposed removal and removing the appellant effective April 1, 2016. *Id*. at 919.

¶5 The appellant grieved the agency's action. At arbitration, the arbitrator identified the issues as whether: (1) the appellant's removal was proper under 5 U.S.C. chapter 43; (2) the agency engaged in unlawful disability discrimination; and (3) the removal was based on the appellant's protected activities. *Id*. at 94. The arbitrator held a hearing on June 27-28, 2017. *Id*. at 94, 123. She found that the agency met its burden of proof in a performance-based action under chapter 43 and that the appellant failed to establish that the agency violated the applicable collective bargaining agreement. *Id*. at 111-17. Further, she found no merit to the appellant's claims that the agency removed her on the basis of her disability, failed to offer her an effective reasonable accommodation in a timely manner, and retaliated against her for seeking a reasonable accommodation and invoking the FMLA. *Id*. at 117-21.

¶6 In her request for review, the appellant asserts that the agency's removal decision is not supported by substantial evidence, that the arbitration decision erroneously interprets civil service laws, rules, and regulations, and that she established that the agency discriminated against her on the basis of disability. *Id*. at 12-23.

## ANALYSIS

The Board has jurisdiction over the appellant's request for review of the arbitrator's decision.

¶7 The Board has jurisdiction to review an arbitration decision under 5 U.S.C. § 7121(d) when the subject matter of the grievance is one over which the Board

---

[2] During the PIP period, the appellant took some Family and Medical Leave Act (FMLA) leave. Because of her FMLA leave, the agency prorated the number of credits that she needed to achieve to be rated at the fully successful level down to 183. *Id*. at 1019.

has jurisdiction, the appellant has alleged discrimination under 5 U.S.C. § 2302(b)(1) in connection with the underlying action, and a final decision has been issued. *Weaver v. Social Security Administration*, 94 M.S.P.R. 447, ¶ 5 (2003). Each of those elements has been satisfied in this case. First, the subject matter of the grievance, a removal under chapter 43, Title 5 of the United States Code, falls within the scope of Board jurisdiction. *See* 5 U.S.C. § 4303(e). Second, the appellant alleges discrimination on the basis of disability. RFR File, Tab 1 at 26-28. Third, the final decision of the arbitrator has been issued in this case. *Id*. at 93-121.

The scope of the Board's review over the arbitrator's decision is limited.

¶8        The scope of the Board's review of an arbitrator's award is narrow; such awards are entitled to a greater degree of deference than initial decisions issued by the Board's administrative judges. *De Bow v. Department of the Air Force*, 97 M.S.P.R. 5, ¶ 5 (2004); *see Robinson v. Department of Health & Human Services*, 30 M.S.P.R. 389, 392-95 (1986) (holding that the Board will not provide de novo review of arbitration decisions appealable under section 7121(d)). The Board will modify or set aside an arbitration decision only when the arbitrator has erred as a matter of law in interpreting civil service law, rule, or regulation. *De Bow*, 97 M.S.P.R. 5, ¶ 5. Absent legal error, the Board cannot substitute its conclusions for those of the arbitrator, even if it would disagree with the arbitrator's decision. *Id*.; *Jones v. Department of the Treasury*, 93 M.S.P.R. 494, ¶ 8 (2003) (finding that an arbitrator's factual determinations are entitled to deference unless the arbitrator erred in his legal analysis by, for example, misallocating the burdens of proof or employing the wrong analytical framework).

The arbitrator erred as a matter of law in interpreting chapter 43.

¶9        At the time the arbitration decision was issued, the agency was required to prove a performance-based action under chapter 43 by establishing the following

by substantial evidence:  (1) the Office of Personnel Management approved its performance appraisal system; (2) the agency communicated to the appellant the performance standards and critical elements of her position; (3) the appellant's performance standards are valid under 5 U.S.C. § 4302(c)(1);[3] (4) the agency warned the appellant of the inadequacies of her performance during the appraisal period and gave her a reasonable opportunity to improve; and (5) the appellant's performance remained unacceptable in at least one critical element.[4]  *Lee v. Environmental Protection Agency*, 115 M.S.P.R. 533, ¶ 5 (2010).  Although the arbitrator applied the correct legal standards (at the time), specifically listing the elements of the agency's burden to prove unacceptable performance pursuant to 5 U.S.C. chapter 43 and noting that the agency had the burden to prove its case by substantial evidence, RFR File, Tab 1 at 94, 111, she improperly found that the appellant was afforded a reasonable opportunity to improve.

¶10    Before initiating an action for unacceptable performance under 5 U.S.C. § 4303, an agency must give the employee a reasonable opportunity to demonstrate acceptable performance.  *Greer v. Department of the Army*, 79 M.S.P.R. 477, 480 (1998).  The employee's right to a reasonable opportunity to improve is a substantive right and a necessary prerequisite to all chapter 43 actions.  *Lee*, 115 M.S.P.R. 533, ¶ 32; *Sandland v. General Services*

---

[3] The National Defense Authorization Act for Fiscal Year 2018 redesignated 5 U.S.C. § 4302(b) as subsection 4302(c).  Pub. L. No. 115-91, § 1097(d)(1)(A), 131 Stat. 1283, 1619 (2017).  Accordingly, 5 U.S.C. § 4302(c)(1) now sets forth the statutory requirements for a valid performance standard.

[4] After the arbitration decision was issued in this case, the U.S. Court of Appeals for the Federal Circuit issued its decision in *Santos v. National Aeronautics & Space Administration*, 990 F.3d 1355 (Fed. Cir. 2021).  In *Santos*, the court found that an agency taking an action under chapter 43 must prove that the employee's performance prior to the PIP justified her placement on the PIP.  *Id*. at 1360-61, 1363.  Because we find, as discussed below, that the agency did not otherwise meet its burden to prove the basis for a chapter 43 action, we need not determine here whether the *Santos* decision impacts the agency's proof of its charge.  *See Pridgen v. Office of Management and Budget*, 2022 MSPB 31, ¶ 15 n.2.

*Administration*, 23 M.S.P.R. 583, 590 (1984). An employee's right to a reasonable opportunity to improve is one of the most important substantive rights in the entire chapter 43 performance appraisal framework. *Sandland*, 23 M.S.P.R. at 590. In determining whether the agency has afforded the appellant a reasonable opportunity to demonstrate acceptable performance, relevant factors include the nature of the duties and responsibilities of the appellant's position, the performance deficiencies involved, and the amount of time which is sufficient to enable the employee to demonstrate acceptable performance. *Lee*, 115 M.S.P.R. 533, ¶ 32.

¶11    The arbitrator found that the agency prorated the appellant's production standard for the duration of the PIP to three credits per week. RFR File, Tab 1 at 116. However, the record does not support this finding. As noted, the appellant's performance standards required that, to be fully successfully, she had to achieve 156 credits during the performance year. RFR File, Tab 1 at 778. The standards thus require producing at an average rate of three credits per week to achieve a fully successful rating.

¶12    However, pursuant to the PIP, the agency required the appellant to meet a far higher average rate of production. Specifically, to successfully complete the PIP, the appellant was required to meet the cumulative productivity requirement for her extended performance year. *Id*. at 925. Essentially, the agency extended the performance year and defined a portion of the extended performance year as the PIP period. It stated that the appellant's 87-day long PIP would begin effective Monday, September 28, 2015, which is the first business day after the end of the fourth quarter, and end Monday, December 28, 2015. *Id*. at 923. It further stated that the appellant must reach 192 credits by the end of the extended performance year, or by the end of the PIP period. Thus, during the 13-week PIP period, the appellant would have had to complete 36 credits plus the 31.5-credit-production shortfall during the 12 months of FY15, or an average of approximately 5 credits per week, a number far higher than the average rate of

production required for a fully successful rating under the performance standards given to the appellant at the beginning of the appraisal year.

¶13    Additional record evidence shows that the agency intended to increase the standards of performance established at the beginning of the appraisal period. Prior to the PIP period, the appellant asked her supervisor to forgive the 31.5-case-credit shortfall for FY15. *Id*. at 928. In response, her supervisor stated that she had "no authority to simply 'forgive' or otherwise ignore any [f]air [s]hare credit deficiency that [kept the appellant] from reaching the Fully Successful level of her annual Productivity requirement." *Id*. The supervisor stated that the appellant must meet 192 credits by December 28, 2015, the end of her PIP period. *Id*. at 929. The supervisor emphasized that the appellant's success or failure in the PIP would ultimately depend on her ability to meet the overall goal through the end of the PIP period, or 192 credits. *Id*.

¶14    By setting a performance production standard of approximately 5 credits per week for the appellant to achieve during her PIP, the agency imposed revised performance standards for the production element that were substantially different from her prior production standard of three credits per week. The PIP thus increased the standards of performance established at the beginning of the appraisal period. The Board has held that a PIP that increases the standards of performance established at the beginning of the appraisal period does not provide a reasonable opportunity to improve. *See Betters v. Federal Emergency Management Agency*, 57 M.S.P.R. 405, 410 (1993); *see also Boggess v. Department of the Air Force*, 31 M.S.P.R. 461, 462-63 (1996) (finding that the agency failed to provide the appellant with a reasonable opportunity to improve when it simultaneously presented him with substantially different performance standards and notified him that his performance was unacceptable); *cf. Brown v. Veterans Administration*, 44 M.S.P.R. 635, 644-45 (1990) (finding that, although the employee must have notice of how his or her performance will be judged during the PIP, when the workload is fairly constant, an employee subject to an

annual numerical standard should reasonably anticipate evaluation of his or her PIP performance under a pro-rata standard). Under the circumstances of this case, the arbitrator erred as a matter of law in finding that the agency provided the appellant with a reasonable opportunity to improve, and the arbitration decision must be reversed. *De Bow*, 97 M.S.P.R. 5, ¶ 5.

The appellant failed to prove that the agency discriminated against her on the basis of disability or retaliated against her for activity protected under anti-disability discrimination statutes.

¶15     In her request for review, the appellant alleges that the arbitrator erred in finding that the agency did not discriminate against the appellant on the basis of disability by failing to timely accommodate her disability. RFR File, Tab 1 at 28. The appellant contends that the delay in granting the accommodation she requested, the ability to telework, ensured that she was not accommodated for the entirety of the PIP period.

¶16     The arbitrator found that the agency had a responsibility to accommodate the appellant and, once she made her request for accommodation, the agency cooperated and responded promptly and granted the appellant's request so that she could begin telework at the start of her PIP. *Id*. at 119. We agree with the arbitrator's finding that the appellant failed to present evidence that the agency failed in its obligation to accommodate her. *Id*. Regarding the appellant's claim that the agency retaliated against her for requesting an accommodation, the Board clarified in *Pridgen* that the "but-for" standard is applicable to retaliation claims under the Americans with Disabilities Act Amendments Act of 2008. *Pridgen v. Office of Management and Budget*, 2022 MSPB 31, ¶¶ 43-47. Here, the arbitrator found no causal connection between the protected activity of requesting an accommodation and the adverse action. We therefore find that the arbitrator

applied the correct analysis in addressing this claim and we agree that it lacks merit.[5]

**ORDER**

¶17     We ORDER the agency to cancel the removal and to reinstate the appellant to her position of Attorney-Advisor (Veterans), GS-14, effective April 1, 2016. *See Kerr v. National Endowment for the Arts*, 726 F.2d 730 (Fed. Cir. 1984).  The agency must complete this action no later than 20 days after the date of this decision.

¶18     We also ORDER the agency to pay the appellant the correct amount of back pay, interest on back pay, and other benefits under the Office of Personnel Management's regulations, no later than 60 calendar days after the date of this decision.  We ORDER the appellant to cooperate in good faith in the agency's efforts to calculate the amount of back pay, interest, and benefits due, and to provide all necessary information the agency requests to help it carry out the Board's Order.  If there is a dispute about the amount of back pay, interest due, and/or other benefits, we ORDER the agency to pay the appellant the undisputed amount no later than 60 calendar days after the date of this decision.

¶19     We further ORDER the agency to tell the appellant promptly in writing when it believes it has fully carried out the Board's Order and to describe the

---

[5] As discussed above, the Federal Circuit's decision in *Santos* now requires the Board to inquire into pre-PIP activity for the purpose of assessing the merits of a chapter 43 action, but also, for the purpose of examining any affirmative defenses arising from facts and circumstances prior to the PIP, as they could relate to the agency's decision to place an employee on a PIP.  *See Santos*, 990 F.3d at 1364.  Here, it is undisputed that the agency informed the appellant that she was being placed on a PIP on September 2, 2015, and memorialized that decision on September 10, 2015.  RFR File, Tab 1 at 8, 928-33, Tab 4 at 7.  It is also undisputed that the appellant filed her request for a reasonable accommodation on September 16, 2015.  RFR File, Tab 1 at 887.  Thus, the appellant's affirmative defenses arise out of facts and circumstances that occurred after the agency's decision to place the appellant on a PIP.  Accordingly, remand is not necessary to consider the appellant's claims in light of *Santos*.

actions it took to carry out the Board's Order. The appellant, if not notified, should ask the agency about its progress. *See* 5 C.F.R. § 1201.181(b).

¶20 No later than 30 days after the agency tells the appellant that it has fully carried out the Board's Order, she may file a petition for enforcement with the Clerk of the Board if the appellant believes that the agency did not fully carry out the Board's Order. The petition should contain specific reasons why she believes that the agency has not fully carried out the Board's Order, and should include the dates and results of any communications with the agency. 5 C.F.R. § 1201.182(a).

¶21 For agencies whose payroll is administered by either the National Finance Center of the Department of Agriculture (NFC) or the Defense Finance and Accounting Service (DFAS), two lists of the information and documentation necessary to process payments and adjustments resulting from a Board decision are attached. The agency is ORDERED to timely provide DFAS or NFC with all documentation necessary to process payments and adjustments resulting from the Board's decision in accordance with the attached lists so that payment can be made within the 60–day period set forth above.

¶22 This is the final decision of the Merit Systems Protection Board in this request for review. Title 5 of the Code of Federal Regulations, section 1201.113(c) (5 C.F.R. § 1201.113(c)).

### NOTICE TO THE APPELLANT REGARDING
### YOUR RIGHT TO REQUEST
### ATTORNEY FEES AND COSTS

You may be entitled to be paid by the agency for your reasonable attorney fees and costs. To be paid, you must meet the requirements set out at Title 5 of the United States Code (5 U.S.C.), sections 7701(g), 1221(g), or 1214(g). The regulations may be found at 5 C.F.R. §§ 1201.201, 1201.202 and 1201.203. If you believe you meet these requirements, you must file a motion for attorney fees

WITHIN 60 CALENDAR DAYS OF THE DATE OF THIS DECISION. You must file your attorney fees motion with the Clerk of the Board.

## NOTICE OF APPEAL RIGHTS[6]

You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be received by the court within **60 calendar days** of the date of issuance of this decision. 5 U.S.C. § 7703(b)(1)(A).

---

[6] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

> U.S. Court of Appeals
> for the Federal Circuit
> 717 Madison Place, N.W.
> Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) Judicial or EEOC review of cases involving a claim of discrimination**.  This option applies to you only if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination.  If so, you may obtain judicial review of this decision—including a disposition of your discrimination claims—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** after you receive this decision.  5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. ____ , 137 S. Ct. 1975 (2017).  If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** after your representative receives this decision.  If the action involves a claim of

discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security.  *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues.  5 U.S.C. § 7702(b)(1).  You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** after you receive this decision.  5 U.S.C. § 7702(b)(1).  If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** after your representative receives this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C.  20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C.  20507

**(3) Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**.  This option applies to you only if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or

other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[7] The court of appeals must <u>receive</u> your petition for review within **60 days** of the <u>date of issuance</u> of this decision. 5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The

---

[7] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017.  The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017.  Pub. L. No. 115-195, 132 Stat. 1510.

Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

FOR THE BOARD:                    /s/ for
                                  Jennifer Everling
                                  Acting Clerk of the Board

Washington, D.C.



**DEFENSE FINANCE AND ACCOUNTING SERVICE**
**Civilian Pay Operations**

# DFAS BACK PAY CHECKLIST

The following documentation is required by DFAS Civilian Pay to compute and pay back pay pursuant to 5 CFR § 550.805.  Human resources/local payroll offices should use the following checklist to ensure a request for payment of back pay is complete.  Missing documentation may substantially delay the processing of a back pay award.  **More information may be found at: https://wss.apan.org/public/DFASPayroll/Back%20Pay%20Process/Forms/AllItems.aspx.**

**NOTE:  Attorneys' fees or other non-wage payments (such as damages) are paid by vendor pay, not DFAS Civilian Pay.**

☐  1) Submit a **"SETTLEMENT INQUIRY - Submission"** Remedy Ticket.  Please identify the specific dates of the back pay period within the ticket comments.

Attach the following documentation to the Remedy Ticket, or provide a statement in the ticket comments as to why the documentation is not applicable:

☐  2) Settlement agreement, administrative determination, arbitrator award, or order.

☐  3) Signed and completed "Employee Statement Relative to Back Pay".

☐  4) All required SF50s (new, corrected, or canceled).  **\*\*\*Do not process online SF50s until notified to do so by DFAS Civilian Pay.\*\*\***

☐  5) Certified timecards/corrected timecards.  **\*\*\*Do not process online timecards until notified to do so by DFAS Civilian Pay.\*\*\***

☐  6) All relevant benefit election forms (e.g. TSP, FEHB, etc.).

☐  7) Outside earnings documentation.  Include record of all amounts earned by the employee in a job undertaken during the back pay period to replace federal employment.  Documentation includes W-2 or 1099 statements, payroll documents/records, etc.  Also, include record of any unemployment earning statements, workers' compensation, CSRS/FERS retirement annuity payments, refunds of CSRS/FERS employee premiums, or severance pay received by the employee upon separation.

**Lump Sum Leave Payment Debts:**  When a separation is later reversed, there is no authority under 5 U.S.C. § 5551 for the reinstated employee to keep the lump sum annual leave payment they may have received.  The payroll office must collect the debt from the back pay award.  The annual leave will be restored to the employee.  Annual leave that exceeds the annual leave ceiling will be restored to a separate leave account pursuant to 5 CFR § 550.805(g).



**NATIONAL FINANCE CENTER CHECKLIST FOR BACK PAY CASES**

Below is the information/documentation required by National Finance Center to process payments/adjustments agreed on in Back Pay Cases (settlements, restorations) or as ordered by the Merit Systems Protection Board, EEOC, and courts**.**

1. Initiate and submit AD-343 (Payroll/Action Request) with clear and concise information describing what to do in accordance with decision.

2. The following information must be included on AD-343 for Restoration:

   a. Employee name and social security number.
   b. Detailed explanation of request.
   c. Valid agency accounting.
   d. Authorized signature (Table 63).
   e. If interest is to be included.
   f. Check mailing address.
   g. Indicate if case is prior to conversion.  Computations must be attached.
   h. Indicate the amount of Severance and Lump Sum Annual Leave Payment to be collected (if applicable).

Attachments to AD-343

1. Provide pay entitlement to include Overtime, Night Differential, Shift Premium, Sunday Premium, etc. with number of hours and dates for each entitlement (if applicable).
2. Copies of SF-50s (Personnel Actions) or list of salary adjustments/changes and amounts.
3. Outside earnings documentation statement from agency.
4. If employee received retirement annuity or unemployment, provide amount and address to return monies.
5. Provide forms for FEGLI, FEHBA, or TSP deductions. (if applicable)
6. If employee was unable to work during any or part of the period involved, certification of the type of leave to be charged and number of hours.
7. If employee retires at end of Restoration Period, provide hours of Lump Sum Annual Leave to be paid.

NOTE:  If prior to conversion, agency must attach Computation Worksheet by Pay Period and required data in 1-7 above.

The following information must be included on AD-343 for Settlement Cases:  (Lump Sum Payment, Correction to Promotion, Wage Grade Increase, FLSA, etc.)

   a. Must provide same data as in 2, a-g above.
   b. Prior to conversion computation must be provided.
   c. Lump Sum amount of Settlement, and if taxable or non-taxable.

If you have any questions or require clarification on the above, please contact NFC's Payroll/Personnel Operations at 504-255-4630.